**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2717-17T3

DIACO CONSTRUCTION, INC.,
d/b/a GRADE CONSTRUCTION,

    Plaintiff-Appellant,

v.

OHIO SECURITY INSURANCE
COMPANY,

    Defendant-Respondent.

_____

Argued December 5, 2018 - Decided August 2, 2019

Before Judges Fuentes, Accurso and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-3485-16.

Francis X. Garrity argued the cause for appellant (Garrity Graham Murphy Garofalo & Flinn, attorneys; Francis X. Garrity, of counsel; Jane G. Glass, on the briefs).

John Thomas Coyne argued the cause for respondent (Mc Elroy Deutsch Mulvaney & Carpenter, LLP, attorneys; John Thomas Coyne, on the brief).

PER CURIAM

Plaintiff Diaco Construction, Inc. lost an excavator in the Elizabeth River in the course of constructing concrete headwalls and outlets for stormwater runoff pursuant to its contract with the City of Elizabeth. A Diaco employee was operating the excavator on the riverbank when he sensed it slipping into the river. Trying to avert disaster, the operator turned the machine and tried to drive it across the river. The effort was not a success as the excavator got stuck three-quarters of the way across. Although nothing leaked into the river from the wreck, the excavator was a total loss and it cost Diaco over $300,000 to remove it a week later following oral demand by the City and the Department of Environmental Protection.

Defendant Ohio Security Insurance Company, Diaco's insurance carrier, paid Diaco $134,904.87 on its first-party direct claim, consisting of $95,000 for loss of the excavator, and $28,750 for debris removal and to test for and contain any fluids that might leak into the river. Diaco subsequently made a third-party liability claim for the cost of removal, which Ohio declined. Diaco filed this declaratory judgment action to resolve the coverage question.

The parties made cross-motions for summary judgment, agreeing on the essential facts. As relevant here, the Ohio commercial general liability (CGL)

2

coverage form[1] provides in the "coverages" section for bodily injury and property damage liability:

    1.    Insuring Agreement

        a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . . .

        b.    This insurance applies to "bodily injury" and "property damage" only if:

            (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory". . . .

The policy defines "property damage," in relevant part, as follows:

    17.    "Property damage" means:

        a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

        b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

The policy also contains the following exclusions:

---

[1]  Ohio's policy is written on the 2012 Insurance Services Office, Inc. (ISO) form.  See Hartford Fire Ins. Co. v. California, 509 U.S. 764, 772 (1993) (describing how CGL forms are produced by the insurance industry).

2.      Exclusions

This insurance does not apply to:

. . . .

j.      Damage to Property

"Property damage" to:

. . . .

(5)     That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6)     That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

. . . .

m.      Damage to Impaired Property or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)     A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

A-2717-17T3

(2)   A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

"Impaired property" is defined as follows:

8.   "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a.   It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b.   You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

"Your product" and "your work" are defined, in relevant part, as follows:

21.   "Your product":

a.   Means:

(1)   any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

. . . .

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

Plaintiff asserted the Elizabeth River qualified as tangible property under the Ohio policy, and the presence of the excavator thus constituted "physical injury to tangible property." Plaintiff further contended the excavator in the river amounted to a trespass and interference with navigation, causing loss of use regardless of whether anyone tried to navigate the river while the excavator remained stuck. Because, plaintiff asserted, "the presence of the excavator in the river, even temporarily, constituted 'physical injury to tangible property[,]' . . . the costs attendant to its [legally necessary] removal qualified as 'property damage.'" Plaintiff claimed that because the river is "owned by the citizens of

6

New Jersey" the excavator "constituted damages and a trespass to this third party, not to the City," plaintiff's contracting partner, and thus the "impaired property" exclusion did not apply. Plaintiff further asserted the "damage to property" exclusion was also inapplicable because it "was not performing work on the river and no one has asserted that its work was 'incorrectly performed.'" Plaintiff argued "[t]he exclusion simply does not apply to the facts of this case," and Ohio did not rely on it in declining coverage.

Defendant Ohio countered that the only coverage available to plaintiff was a first-party claim under the inland marine section of the policy, which provided for, among other things, loss of the excavator and the expense of debris removal. Ohio contended the fact that the coverage plaintiff purchased was not sufficient to cover the full expense of removing the excavator from the river, did not make its removal a third-party liability claim under the CGL portion of the policy.

Ohio argued plaintiff could not establish "property damage" under either the "physical injury" or "loss of use" policy definitions. First, Ohio contended the submerged portion of the excavator did not "injure" the river any more than the portion protruding above the waterline "injured" the surrounding air. Second, neither the City, the State, nor anyone else alleged it suffered any monetary damage due to "loss of use" of the river.

7

Ohio further argued that even if plaintiff could establish that the excavator in the river constituted an "injury to" or "loss of use of" the river, and thus "property damage" under the policy, the "impaired property" exclusion bars coverage because: a) plaintiff had a contractual obligation to remove its construction equipment, including the excavator, from the site upon completion of the project; and b) upon removal, the river was restored to its original condition.

Ohio also contended the "damage to property" exclusion (j)(5) also barred coverage because plaintiff was "performing operations on 'that particular part' of the river entered by the excavator" when the accident occurred. Ohio noted plaintiff did not dispute that its contract with the City provided "that the Work will occur on the site of an earthen levee, ponding/containment area and the Elizabeth River," nor that it was required to construct the "ponding/containment area" by the construction of a cofferdam in the river. Plaintiff specifically admitted the concrete headwalls it was constructing extended below the waterline, requiring it "to perform work in and on the river itself, not merely on the banks."

Ohio contended the "damage to property" exclusion (j)(6) would also apply because any "property damage" to the river caused by the presence of the

excavator requiring "restoration" or "repair" would be as a result of plaintiff "incorrectly perform[ing]" its work on that area. Ohio contended "[t]he 'incorrectly performed' work was the negligent operation of the excavator, leading to its partial submersion." According to Ohio, the only reason it did not disclaim on the basis of exclusion (j) when it initially denied coverage was that it was not aware at that time that plaintiff's contract obligated it to perform work in the river in addition to on the banks.

Finally, Ohio also argued that coverage was barred by the "voluntary payments" clause of the policy which prohibits the insured from voluntarily making any payment, except at its own cost, or assuming any obligation or incurring any expense without Ohio's consent.

After hearing argument on the cross-motions, the trial court judge issued a comprehensive written opinion dismissing plaintiff's complaint. After detailing the undisputed facts, the court concluded plaintiff could not establish "property damage" under the CGL portion of the policy.

The judge began his analysis by rejecting plaintiff's characterization of the City's demand for removal of the excavator as a "claim" under the policy because the City never filed suit or even issued a written demand. The judge also rejected plaintiff's assertion that the excavator's presence in the river

constituted a trespass or created an obstruction to navigation, noting "at no time has any party suggested that due to the presence of the excavator, the use of the river was curtailed in any way. Thus, the 'loss of use' prong, of the 'property damage' definition is not satisfied."

The judge concluded plaintiff failed to satisfy the "physical injury" prong because it could not establish any detrimental alteration of the river. See Phibro Animal Health Corp. v. Nat'l Union Fire Ins. Co., 446 N.J. Super. 419, 436-40 (App. Div. 2016) (interpreting the same ISO definition to hold stunted growth of broiler chickens to constitute "physical injury" based on harm to the chickens' physical condition). The judge found, based on the undisputed facts, that "the river was not detrimentally altered. Its appearance, shape, color, and dimension remained exactly the same. Once the excavator was removed, nothing was required to repair any damage or harm to the river because no damage or harm was done."

Although finding no coverage under the policy, the judge went on to conclude that even if plaintiff could have established property damage, the "impaired property" and "damage to property" exclusions provided an additional basis for denial of coverage. Specifically, the judge found plaintiff was contractually obligated to remove its equipment from the job site and, upon the

excavator's removal from the river, it was immediately restored to its prior condition, thus precluding coverage under the "impaired property" exclusion. The judge found the "damage to property" exclusion applied as it was undisputed that plaintiff was performing work on the river itself when the excavator got stuck and plaintiff's work was ongoing when the accident occurred.

Plaintiff appeals, reprising the arguments he made in the Law Division. Although we review the trial court judge's interpretation of the Ohio policy de novo, see id. at 428, we find no flaw in the judge's analysis of the policy language. Plaintiff simply could not establish property damage under the terms of the CGL policy. Assuming the river constituted tangible property, the excavator's temporary stalled presence therein inflicted no more physical injury on the river than the excavator would have inflicted on the ground had it broken down along the bank and had to be towed away. As plaintiff could not establish any loss of use of the river by anyone, it failed to establish it was entitled to coverage under the CGL portion of the policy. Although that determination is dispositive of the appeal, we note our agreement with the judge's construction of the exclusion clauses as well.

11

Having considered plaintiff's arguments and reviewed the record on the motions, we affirm, substantially for the reasons expressed by Judge Mongiardo in his cogent and well-reasoned written opinion of January 22, 2018.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12

A-2717-17T3